**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| CYSTIC FIBROSIS PHARMACY, INC. | ) | |
| 3901 E. Colonial Drive | ) | |
| Orlando, Florida 32803 | ) | |
| | ) | Case No. _____ |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EXPRESS SCRIPTS, INC. | ) | **JURY TRIAL DEMANDED** |
| One Express Way, | ) | |
| St. Louis, Missouri 63121 | ) | |
| | ) | |
| Serve: | ) | |
| | ) | |
| Leah Stoecker, Asst. Gen. Counsel | ) | |
| One Express Way, Mail Stop HQ2E03 | ) | |
| St. Louis, Missouri 63121 | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

COMES NOW Plaintiff Cystic Fibrosis Pharmacy, Inc. ("Cystic Fibrosis"), by and through its undersigned attorneys, and states the following as its Complaint against Defendant Express Scripts, Inc. ("ESI"):

**Nature of the Case**

1.      This case arises out of ESI's unlawful attempt to terminate Cystic Fibrosis from its network of pharmacies effective July 18, 2016.  ESI's termination is baseless and improper.

2.      ESI has not identified any facts that would allow a termination, and there are none.

1

3.     If the termination is not preliminarily enjoined, Cystic Fibrosis is at risk of permanently losing customers, and its business will be all but destroyed.

4.     More importantly, as a specialized and unique pharmacy in Orlando, Florida, ESI insured's and Cystic Fibrosis patients will be unable to obtain necessary prescriptions to maintain their health.

5.     Immediate relief is required to prevent irreparable harm.

**Parties, Jurisdiction, and Venue**

6.     Cystic Fibrosis is a Florida corporation with its principal place of business located at 3901 E. Colonial Drive, Orlando, FL 32803.

7.     ESI is a Delaware corporation with its principal place of business at One Express Way, St. Louis, Missouri 63121.

8.     ESI is a Pharmacy Benefit Manager ("PBM").

9.     This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000, and the parties are citizens of different states.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391 and because the Provider Manual requires litigation over the Provider Manual be venued in the Eastern District of Missouri. A copy of the Provider Manual is referenced as Exhibit "1", but not attached due to confidentiality concerns, but subject to a separate motion to file under seal.

**Cystic Fibrosis's Delivery of Pharmacy Services and ESI's Ability to Interfere**

11.     Cystic Fibrosis provides traditional pharmacy and compounding services.

12.     Cystic Fibrosis was founded in 1998 and has provided and continues to provide high quality services while focusing on long-term patient relationships for special needs patients.

13.     Cystic Fibrosis has and remains available and accessible and provides continuity of service.

14.     Pharmacy Benefit Managers (PBM's) are an integral part of the delivery of healthcare benefits and third-party administrators.

15.     PBM's, by way of contracts or employment relationships with insurance carriers, health benefit plan sponsors, or other third-party players, PBM's manage the prescription drug coverage provided by the carrier, plan sponsor, or other third-party player. PBM's contract with pharmacies, or third-party pharmacy services administrative organizations (PSAO's), to provide prescription drugs to insureds and health plan members, and the process and pay claims for prescription drugs.

16.     Upon information and belief, ESI is the nation's largest PBM.  Together with Medco (now owned by ESI) and Caremark, these PBM's administer approximately 80% of the insured prescriptions and 90% of insured mail order prescriptions.  Upon information and belief each of these companies has annual revenues exceeding $15 billion.

17.     ESI and Medco manage drug benefits for over 200 million Americans.  It is believed that this amounts to approximately 95% of Americans with prescription drug coverage.

18.     By engaging in anti-competitive and other unlawful behavior, ESI and Medco became two of the three largest PBM's controlling all aspects of prescription drug benefit plans, including creating formularies of preferred medicines, negotiating with drug manufacturers for discounts and rebates, negotiating with pharmacies to establish retail networks for dispensing drugs, and establishing automated processes for determining (often called "adjudicating") coverage eligibility at the point of sale.

19.     ESI also owns and operations its own mail order pharmacy to fill prescriptions directly and takes affirmative steps to direct the flow of prescriptions to its own pharmacy to increase market share, slow down the costs, and eliminate competition.

3

20.     Pharmacies have no choice in the market but to acquiesce to ESI's demands or be effectively shut out of the market.

### The Provider Agreement

21.     In May, 2014, ESI and Cystic Fibrosis entered into a written contract (the "Provider Agreement") pursuant to which Cystic Fibrosis became a participating provider of prescription drugs in ESI's network of pharmacies.  A copy of the Provider Agreement is referenced as Exhibit "2", but not attached due to confidentiality concerns, but subject to a separate motion to file under seal.

22.     Cystic Fibrosis is a Provider under the Provider Agreement that governs the relationship between Cystic Fibrosis and ESI.

23.     The Provider Agreement allows ESI to terminate Cystic Fibrosis from its pharmacy network in specific instances.  In that regard Section 4.2(c) provides for Immediate Termination in very specific instances as follows:

> (i) Provider ceases to be licensed by the appropriate licensing authority; (ii) Provides submits a fraudulent prescription drug claim or any information in support thereof; (iii) Provider is insolvent, goes into receivership or bankruptcy or any other action is taken on behalf of its creditors; (iv) Provider fails to comply with the claims submission and processing requirements as set forth in Section 2.3 or fails to comply with Section 2.4 of this Agreement or any of ESI's policies and procedures including, but not limited to, the Provider Manual and/or quality assurance and/or utilization review procedures; (v) no longer meets credentialing requirements; (vi) ESI determines that the Provider is dispensing Covered Medications in violation of any applicable law, rule and/or regulation; (vii) Provider is excluded from participating in any federal or state health care program; (viii) Provider fails to maintain insurance as required by Section 6.1 of this Agreement; (ix) Provider has not submitted a claim to ESI for ninety (90) calendar days; (x) Provider (or any Pharmacy) fails to comply with any audit or investigative request, including the provision of information, made by ESI or any Sponsor or their designee, within the time period stated in such request; (xi) a determination is made by ESI that Provider (or any Pharmacy) failed to document

4

purchases or prescription drugs sufficient to support its claims for reimbursement to ESI; or (xii) ESI determines that Provider's continued performance of services poses a risk to the health, welfare or safety of any Member.

**ESI's Targeting of Cystic Fibrosis**

24.     On April 25, 2016, Cystic Fibrosis received notification that it would be subject to audit on May 19, 2016.

25.     Approximately one week later, ESI provided a list of Targeted Claims for the May 19, 2016 Audit.

26.     Despite proper maintenance of all records, complete safety and security, proper billing, and safe services, ESI chose to terminate Cystic Fibrosis as a Network Provider effective July 18, 2016 for providing mail order prescriptions.  A true and accurate copy of the ESI termination is attached hereto and incorporated herein as Exhibit "3."

27.     Specifically, ESI noted that Cystic Fibrosis was prohibited from being a mail order pharmacy because it was a retail pharmacy and those terms, pursuant to the ESI classification are mutually exclusive.  See Ex. 3.

28.     Additionally, ESI alleged that Cystic Fibrosis mailed prescriptions to states where it was not licensed to dispense.

29.     Despite ESI's complete reliance on the Provider Agreement and Network Provider Manual as the basis to exclude Cystic Fibrosis as a Provider in the ESI network, ESI contradicts the very terms of the relationship that provides a timeline of 30 days for Cystic Fibrosis and ESI to work in good faith toward a dispute resolution of the issues giving rise to the purported termination of Cystic Fibrosis.

30.     However, before the thirty (30) days expires for the good faith dispute resolution process, Cystic Fibrosis will be terminated from the network.

31.     Moreover, the Florida Addendum to the Provider Manual requires (90) days notice for pharmacies, such as Cystic Fibrosis, that are Florida entities.

32.     Despite request to extend the termination deadline to comply with these mandates, ESI declined and indicated that it would enforce the July 18, 2016 termination date.

33.     Also, of great concern, ESI has commenced issuing notices to Cystic Fibrosis patients advising that Cystic Fibrosis is out of network July 8, 2016 – ten (10) days prior to what was presented to Cystic Fibrosis thereby shortening the good faith discussion time even more.

34.     Cystic Fibrosis has repeatedly met and satisfied all criteria under the Provider Agreement.

35.     Cystic Fibrosis has repeatedly met and satisfied all requirements of ESI.

**Irreparable Injury to Cystic Fibrosis**

36.     ESI's wrongful termination of Cystic Fibrosis will result in irreparable harm by putting at risk the lives of the many patients of Cystic Fibrosis serves.

37.     Cystic Fibrosis provides services for many patients who depend upon their medications, coverage for which is supposed to be provided by ESI pursuant to the Provider Agreement.

38.     ESI's termination of Cystic Fibrosis will result in a diversion of patients and Cystic Fibrosis will lose, overnight, revenue that will cause it to close its doors and terminates all employees.

39.     Furthermore, Cystic Fibrosis's reputation in the industry will be permanently damaged.   Cystic Fibrosis will have to report the termination of its contract with ESI and it is extremely likely that such termination will have a domino effect on Cystic Fibrosis's relationship with other PBM's, accrediting agencies, and industry players leading to the destruction of Cystic Fibrosis business for an entirely separate reason.

40.     Cystic Fibrosis has no adequate remedy at law which compensated for the impending injury that ESI's actions will cause if the termination is permitted to go forward.

## COUNT I

## BREACH OF CONTRACT

41.     Cystic Fibrosis incorporates by reference as though fully set forth herein paragraphs 1 through 40 of the Complaint.

42.     Cystic Fibrosis and ESI have a relationship under the Provider Agreement that has been breached by ESI.

43.     ESI's attempts to terminate Cystic Fibrosis from its networks of participating pharmacies is not warranted, proper, or permitted under the Provider Agreement and have violated due process.

44.     The Provider Agreement also provides that ESI shall notify Cystic Fibrosis of any default under the contract; allow Cystic Fibrosis to cure any default; meet and confer regarding the dispute; and negotiate in good faith to resolve any discrepancy between the parties.

45.     ESI failed to notify Cystic Fibrosis of any default under the Provider Agreement thereby negating ESI's opportunity cure said default.

46.     ESI has not participated in any meet and confer or good faith negotiation as required by ESI's own contracts regarding the attempted termination of Cystic Fibrosis.

47.     ESI's mandated diversion of Cystic Fibrosis's patients and the associated revenue in connection therewith is a breach of the implied duty of good faith and fair dealing.

48.     Excluding Cystic Fibrosis from ESI's pharmacy provider network will deprive Cystic Fibrosis of its ability to provide prescription drugs to ESI members.

49.     Cystic Fibrosis has fully performed all material obligations under the Provider Agreement.

50.     As a direct and proximate result of ESI's breaches under the Provider Agreement as well as its Network Provider Manual, not attached as an exhibit due to confidential language, but available to file under seal, Cystic Fibrosis has been and will continue to be damaged.

51.     ESI does not have any cause to terminate Cystic Fibrosis in this case.

52.     Any termination without cause requires a minimum of **90** days written notice in the State of Florida pursuant to the Addendum to the Provider Manual.

53.     The harm to Cystic Fibrosis from ESI's termination will be irreparable as exhibiting customers will be forced to locate new pharmaceutical companies on short and inadequate notice.

54.     Once Cystic Fibrosis's customers are forced to find other pharmacies it is unlikely that the customers will return and they will be permanently lost.

55.     Interruptions in Cystic Fibrosis's ability to supply specialized, compounded prescriptions to its existing customers will harm its reputations among physicians, health care providers, and potential customers.

56.     Termination of the Provider Agreement is also likely to result in the loss of business from existing and potential customers as physicians and health care providers will refer patients to a pharmacy that can supply the needs of parties who are covered under ESI's pharmacy benefit plan.

57.     Termination from ESI's network will render Cystic Fibrosis insolvent and Cystic Fibrosis will be forced to close its doors and lay off employees.

## COUNT II

### BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

58.     Cystic Fibrosis incorporates by reference as though fully set forth herein paragraphs 1 through 57 of the Complaint.

8

59.     ESI has an obligation to carry out the Provider Agreement in good faith and deal fairly with Cystic Fibrosis.

60.     Upon information and belief, ESI is enforcing a termination against Cystic Fibrosis on inaccurate conclusions and without full evaluation of all materials.

61.     Upon information and belief, despite repeated requests, ESI has refused to discuss the instant claimed issues with Cystic Fibrosis.

62.     Upon information and belief, ESI will divert Cystic Fibrosis patients and revenue to ESI's own specialty pharmacy or to a pharmacy that is more economically advantageous to ESI.

63.     ESI is not acting on good faith and using improper and inaccurate assertions, conclusions, and information to terminate Cystic Fibrosis.

64.     Cystic Fibrosis is damaged by ESI's actions.

## COUNT III

## UNJUST ENRICHMENT

65.     Cystic Fibrosis incorporates by reference as though fully set forth herein paragraphs 1 through 64 of the Complaint.

66.     Upon information and belief, ESI is improperly terminating Cystic Fibrosis's status as an ESI provider.

67.     ESI will either directly gain patients and revenue through wholly or partially owned pharmacies, will divert patients to pharmacies where ESI has a more favorable Provider Agreement, or will interfere so directly that patients will be unable to obtain their prescriptions thereby saving ESI monies.

9

68.     Cystic Fibrosis has invested in these patient relationships and ESI's attempts to poach, divert, and eliminate these patients is self-serving and at the expense of Cystic Fibrosis.

69.     ESI is not entitled to nor deserving the business from Cystic Fibrosis or any financial gain or incentive it can manipulate as a result of eliminating Cystic Fibrosis as a Provider in the ESI network.

70.     It is inequitable for ESI to accept and retain the benefit of poaching, diversion or eliminating member usage of Cystic Fibrosis.

71.     As a result of ESI's actions, ESI has been and will continue to be unjustly enriched by the business Cystic Fibrosis has developed and which ESI seeks to poach, divert and/or eliminate.

## COUNT IV

## TORTIOUS INTERFERENCE

72.     Cystic Fibrosis incorporates by reference as though fully set forth herein paragraphs 1 through 71 of the Complaint.

73.     ESI has knowledge of the business relationships between Cystic Fibrosis and its patient base.

74.     ESI has knowledge of Cystic Fibrosis's expectancy that it would maintain its business relationship with its patient based and the fact that Cystic Fibrosis invested substantial resources in developing and maintaining those relationships.

75.     Despite having knowledge of these business relationships, ESI has tortiously interfered with such business relationships, without justification or excuse.

76.     Further, upon information and belief, ESI intends to further tortiously interfere with Cystic Fibrosis's contractual and business relationships, in a manner both willful and intentional, without justification or excuse.

10

77.     As a result of the actions of ESI, Cystic Fibrosis has been injured and faces irreparable harm.

78.     Cystic Fibrosis is threatened with losing or has lost its business, income, viability, and/or goodwill.

79.     ESI's action have and continue to cause damage to Cystic Fibrosis.

## COUNT V

## DECLARATORY JUDGMENT

80.     Cystic Fibrosis incorporates by reference as though fully set forth herein paragraphs 1 through 79 of the Complaint.

81.     ESI and Cystic Fibrosis have a valid Provider Agreement governing the relationship of the parties.

82.     There is a dispute as to the terms, obligations, duties, rights, and responsibilities under the Provider Agreement.

83.     Cystic Fibrosis respectfully requests that this Court declare the parties' rights and obligations pursuant to the Provider Agreement.

## COUNT VI

## INJUNCTIVE RELIEF

84.     Cystic Fibrosis incorporates by reference as though fully set forth herein paragraphs 1 through 83 of the Complaint.

85.     In violation of the Provider Agreement, ESI has purported to terminate Cystic Fibrosis as an ESI provider effective July 18, 2016.

86.     ESI's wrongful termination has, and unless restrained by this Court, will continue to cause irreparable injury to Cystic Fibrosis's business, including, but not limited to customers'' needs for prescriptions, the sustainability of the business, ongoing employment for employees,

11

service provider relationships, and the reputation of the pharmacy for which there is no adequate remedy at law.

87.     ESI's wrongful conduct proximately caused loss to Cystic Fibrosis in an amount to be determined at trial as well as an amount that cannot be financially recovered and for which the only recovery is injunctive relief.

WHEREFORE, Plaintiff Cystic Fibrosis Pharmacy respectfully requests that this Court enter judgment in its favor against Defendant Express Scripts, Inc. and preliminarily enjoin Express Scripts, Inc. as follows:

A.     From termination of the Provider Agreement and removal of Cystic Fibrosis as a participating provider for ESI members;

B.     From contacting Cystic Fibrosis's patients in an attempt to transition them away from Cystic Fibrosis;

C.     From any interference with Cystic Fibrosis's business relationships with patients;

D.     An award to Cystic Fibrosis for damages suffered, including, but not limited to lost profits, in an amount to be proven at trial;

E.     A declaration of the rights and responsibilities of the parties under the Provider Agreement;

F.     An award of attorneys' fees and costs of this action;

G.     An award of compensatory and punitive fees;

H.     An award of pre-judgment interest; and

I.     Grant such other further relief as the Court deems just and equitable.

Respectfully submitted,


  _/s/ Donald H. Sanders, III_____
Donald H. Sanders, III (66195MO)
D.H. SANDERS, LLC
8011 Clayton Road, Third Floor
St. Louis, Missouri 63117
(314) 727-7100
(314) 727-4762 Facsimile
sanders@dhslawfirm.com




_____
Anthony J. Calamunci (0063937) (Pro Hac Vice
Pending)
FISHER BROYLES, LLP
6800 W. Central Ave., Suite E
Toledo, Ohio 43617
(419) 214-1050
(484) 251-7797 Facsimile
anthony.calamunci@fisherbroyles.com


*Attorneys for Plaintiff*