UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CYSTIC FIBROSIS PHARMACY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:16-CV-1167 (CEJ) |
| | ) |
| EXPRESS SCRIPTS, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for partial dismissal of the first amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff has filed a response in opposition, and the issues are fully briefed.

**I.  Background**

Plaintiff Cystic Fibrosis Pharmacy, Inc., provides traditional pharmacy and compounding services. Defendant Express Scripts, Inc., ("ESI") is a pharmacy benefits manager that processes and pays insurance claims for prescription drugs. Patients in plans managed by defendant receive prescription drugs from participating pharmacies, such as plaintiff, or directly from defendant through the mail-order pharmacy it owns and operates. [See Doc. # 44 at ¶¶15, 19].

In May 2014, plaintiff joined defendant's network of pharmacies. [Doc. # 44 at ¶21]. In April 2016, defendant notified plaintiff that it would be subjected to an audit on May 19, 2016. On June 10, 2016, defendant notified plaintiff that it was terminating the provider agreement pursuant to the agreement's "immediate

termination" provision, § 4.2.c.[1] [Doc. # 44 at ¶¶24-25].[2] As grounds for the termination, defendant stated that it had determined that plaintiff was primarily operating a mail order business, rather than a retail pharmacy as required by the provider agreement. Defendant also determined that plaintiff was regularly mailing drugs to patients in states "without appropriate licensure." [Doc. # 44-2]. Although defendant's notice to plaintiff stated that the termination was effective "on or about July 18, 2016," defendant notified patients that plaintiff would be out of network on July 8, 2016. [Doc. # 44 at ¶33].

Plaintiff alleges that its termination is not justified under the provider agreement. Plaintiff also alleges that defendant did not comply with provisions requiring notice 90 days before termination and a 30-day period for dispute

---

[1] Section 4.2.c of the provider agreement states that defendant has the right to immediately terminate the agreement if:
> (i) Provider ceases to be licensed by the appropriate licensing authority; (ii) Provider submits a fraudulent prescription drug claim or any information in support thereof; (iii) Provider is insolvent, goes into receivership or bankruptcy or any other action is taken on behalf of its creditors; (iv) Provider fails to comply with the claims submission and processing requirements as set forth in Section 2.3 or fails to comply with Section 2.4 of this Agreement or any of ESI's policies and procedures including, but not limited to, the Provider Manual and/or quality assurance and/or utilization review procedures; (v) no longer meets credentialing requirements; (vi) ESI determines that the Provider is dispensing Covered Medications in violation of any applicable law, rule and/or regulation; (vii) Provider is excluded from participating in any federal or state health care program; (viii) Provider fails to maintain insurance as required by Section 6.1 of this Agreement; (ix) Provider has not submitted a claim to ESI for ninety (90) calendar days; (x) Provider (or any Pharmacy) fails to comply with any audit or investigative request, including the provision of information, made by ESI or any Sponsor or their designee, within the time period stated in such request; (xi) a determination is made by ESI that Provider (or any Pharmacy) failed to document purchases or prescription drugs sufficient to support its claims for reimbursement to ESI; or (xii) ESI determines that Provider's continued performance of services poses a risk to the health, welfare or safety of any Member.

Provider Agreement [Doc. # 52-2 at 7].

[2] Defendant also cited Appendix B of the provider manual, which applies to providers operating under an agreement entered into with Medco Health Solutions, Inc., before Medco was acquired by ESI. See Provider Manual [Doc. # 52 at 8, 249].

2

resolution. [Doc. # 44 at ¶¶29-31, 44, 52]. In the first amended complaint, plaintiff asserts the following claims: breach of contract arising from the termination of the provider agreement (Count I); breach of implied duty of good faith and fair dealing (Count II); unjust enrichment (Count III); tortious interference with plaintiff's patient base (Count IV); declaratory judgment (Count V); injunctive relief (Count VI); breach of contract arising from failure to pay monies due and owing (Count VII); and tortious interference with patient choice (Count VIII).

Defendant moves to dismiss Counts II through VI and VIII.

## II. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Scheuer, 416 U.S. at 236. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see id. at 563 (stating that the "no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45–46 (1957), "has earned its retirement"); see also Ashcroft

v. Iqbal, 556 U.S. 662, 678–84 (2009) (holding that the pleading standard set forth in Twombly applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

### III. Discussion

#### A. Count II - Breach of implied covenant of good faith and fair dealing

"In Missouri, all contracts have an implied covenant of good faith and fair dealing." Lucero v. Curators of Univ. of Missouri, 400 S.W.3d 1, 9 (Mo. Ct. App. 2013) (citation omitted). This good faith requirement extends to the manner in which a party employs discretion conferred by a contract. BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 914 (8th Cir. 2007) (citing Mo. Consol. Health Care Plan v. Cmty. Health Plan, 81 S.W.3d 34, 45 (Mo. Ct. App. 2002)). "When a decision is left to the discretion of one party, the question is not whether the party made an erroneous decision but whether the decision was made in bad faith or was arbitrary or capricious so as to amount to an abuse of discretion." Cordry v. Vanderbilt Mortg. & Fin., Inc., 445 F.3d 1106, 1112 (8th Cir. 2006) (citation omitted). Evidence suggesting that a party's discretionary decision was a mere pretext for terminating the contract will support a finding of bad faith. See Citimortgage, Inc. v. OCM Bancorp, Inc, No. 4:10CV467 CDP, 2011 WL 1594950, at *4 (E.D. Mo. Apr. 27, 2011) (citing BJC, 478 F.3d at 915–16).

Under Missouri law, the "implied covenant will not . . . be imposed where the parties expressly address the matter at issue in their contract." State v. Nationwide Life Ins. Co., 340 S.W.3d 161, 194 (Mo. Ct. App. 2011) ("There is no authority for the proposition that a party has an implied duty of good faith and fair dealing to agree to renew a contract that is set to expire by its negotiated terms."). Defendant

4

argues that plaintiff's claim for breach of the implied covenant of good faith and fair dealing must be dismissed because § 4.2 of the provider agreement expressly governs termination. Plaintiff's claim is based on its contention that termination was not justified under the contract and was undertaken in order to divert plaintiff's patients to other pharmacies. See Doc. #44 at ¶¶16, 18 (defendant has become the nation's largest PBM as a result of engaging in "anticompetitive and other unlawful behavior."); ¶19 (defendant "takes affirmative steps to direct the flow of prescriptions to its own [mail order] pharmacy to increase market share, slow down the costs, and eliminate competition."); ¶51, 62 (defendant did not have cause to terminate its provider agreement and will divert plaintiff's patients to its own pharmacy or another pharmacy that is more economically advantageous to it); ¶¶33, 44 (defendant failed to comply with contractual requirements regarding notice and an opportunity to cure and prematurely notified plaintiff's patients that it was no longer a covered provider). Accepting these allegations as true and drawing all inferences in favor of plaintiff, plaintiff has sufficiently alleged that defendant's termination decision was made in bad faith. See Citimortgage, Inc. v. Platinum Home Mortg. Corp., No. 4:15CV1242 JCH, 2016 WL 147110, at *4 (E.D. Mo. Jan. 13, 2016) (finding defendant adequately stated counterclaim for breach of implied covenants by alleging that plaintiffs acted on nonexistent defects and failed to afford contractually-mandated period and opportunity to cure). Plaintiff has adequately stated a claim for breach of the implied covenant of good faith and fair dealing and defendant's motion to dismiss will be denied with respect to Count II.

**B.     Count III - Unjust enrichment**

Plaintiff alleges in Count III that, as a consequence of improperly terminating the provider agreement, defendant will derive an unjust benefit in the form of diverting plaintiff's patients to other pharmacies in which defendant has an ownership interest or with which defendant has a more favorable provider agreement.

In order to state a claim for unjust enrichment under Missouri law, plaintiff must plead that (1) the defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it would be unjust to allow the defendant to retain the benefit. Exec. Bd. of Missouri Baptist Convention v. Windermere Baptist Conference Ctr., 280 S.W.3d 678, 697 (Mo. Ct. App. 2009) (quotation and citation omitted). Because unjust enrichment is "an equitable remedy based on the concept of a quasi-contract," a plaintiff may not "recover under both an express contract and unjust enrichment." Affordable Communities of Missouri v. Fed. Nat. Mortg. Ass'n, 714 F.3d 1069, 1077 (8th Cir. 2013) (quoting Reyner v. Crawford, 334 S.W.3d 168, 174 (Mo. Ct. App. 2011) and Chem Gro of Houghton, Inc. v. Lewis Cnty. Rural Elec. Coop. Ass'n, No. 2:11CV93 JCH, 2012 WL 1025001, at *3 (E.D. Mo. Mar. 26, 2012)). Rather, if a "plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract." Id. (quoting Howard v. Turnbull, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010)). However, "[t]he fact that a plaintiff cannot simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in [its] complaint." Franke v. Greene, No. 4:11CV1860 JCH, 2012 WL 3156577, at *5 (E.D. Mo. Aug. 2, 2012)

6

(quoting Owen v. General Motors Corp., No. 06–4067–CV–C–NKL, 2006 WL 2808632, at *2 (W.D. Mo. Sept. 28, 2006)).

Defendant argues that plaintiff's unjust enrichment claim must be dismissed because the parties have an express contract. In support of its argument, defendant cites 32nd St. Surgery Ctr., LLC v. Right Choice Managed Care, 820 F.3d 950, 955–56 (8th Cir. 2016), and Lowe v. Hill, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014), in which the courts found that express contracts precluded claims for unjust enrichment. The decisions in these cases were made during the later stages of litigation and not based solely on the complaint. See Doug Volz, et al. v. Provider Plus, Inc., et al, No. 4:15CV0256 TCM, 2015 WL 3621113, at *4 (E.D. Mo. June 9, 2015) (denying motion to dismiss unjust enrichment claim). In Affordable Communities, 714 F.3d at 1077 (8th Cir. 2013), which defendant also cites, an unjust enrichment claim was properly dismissed where the plaintiff conceded that the parties' dispute was based in contract. Finally, in Cregan v. Mortg. One Corp., No. 4:16 CV 387 RWS, 2016 WL 3072395, at *5 (E.D. Mo. June 1, 2016), plaintiffs brought claims for breach of contract and unjust enrichment based on allegations that the defendants collected interest and fees in excess of the contractually agreed-upon amount. The court dismissed their unjust enrichment claim, stating that "[p]laintiffs cannot argue that the parties *have an agreement* that provides a method for calculating interest fees and late charges and in the same breath argue that their claim is based on the *lack of an agreement.*" (emphasis in original).

Here, plaintiff's unjust enrichment claim is not based on the allegedly improper termination of the provider agreement. Rather, the subject of the claim is the patient relationships that plaintiff asserts defendant has unjustly diverted for its

7

own benefit. Defendant does not identify provisions in the contract that cover this claim and thus its motion to dismiss Count III will be denied.

## C. Counts IV and VIII - Tortious Interference

Plaintiff asserts two tortious-interference claims: In Count IV, plaintiff alleges that defendant tortiously interfered with its business relationships with its patient base and, in Count VIII, plaintiff alleges that defendant interfered with "patient choice to obtain prescriptions from any source or medium." [Doc. # 44 at ¶95].

The elements of a cause of action for tortious interference with a business expectancy or relationship are: (1) a contract or valid business relationship or expectancy; (2) the defendant's knowledge of the relationship or contract; (3) intentional interference by the defendant causing or inducing a breach of the contract or relationship; (4) the absence of justification; and (5) damages resulting from the conduct of the defendant. Hertz Corp. v. RAKS Hosp., Inc., 196 S.W.3d 536, 549 (Mo. Ct. App. 2006) (citation omitted).

Plaintiff's claim in Count VIII fails because plaintiff does not have a valid business expectancy in patients' abilities to choose their pharmaceutical providers. To the extent that plaintiff claims in Count VIII that defendant interfered in patients' ability to choose plaintiff as their pharmacy provider, this is redundant of the claim asserted in Count IV. Defendant's motion to dismiss Count VIII will be granted.

Defendant argues that Count IV must be dismissed because plaintiff has not sufficiently alleged that defendant's actions caused a third party to terminate its business relationship with plaintiff. Plaintiff alleges that defendant's improper termination of the provider agreement will cause patients to transfer to other

8

pharmacies. [Doc. # 44 at ¶¶ 38, 47, 51, 53, 62-63]. This is sufficient to support plaintiff's claim. Schoedinger v. United Healthcare of Midwest, Inc., No. 4:07CV904SNLJ, 2011 WL 97735, at *7 (E.D. Mo. Jan. 12, 2011), on which defendant relies, is distinguishable. Schoedinger involved a tortious interference claim against an insurance company that failed to pay plaintiff for hundreds of claims for medical services provided by plaintiff. Plaintiff's tortious interference claim failed because there was no allegation or evidence that any patients terminated their business relationship with the plaintiff due to the actions of the defendant. Id. Here, however, plaintiff alleges that its termination from the provider network will result in the "mandated diversion" of its patients to other providers.

Defendant also argues that plaintiff fails to allege that it acted without justification as required to satisfy the fourth element.

> Typically, the issue of justification arises in situations in which the defendant has a legitimate economic interest to protect. In these situations, the defendant is said to be justified in interfering with another's business expectancy for the purpose of protecting his own economic interest, so long as he does not employ improper means. "Improper means" are those means that are "independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." One does not, however, necessarily need to have an economic interest at stake in order to be justified in interfering with a contract or business expectancy. Justification also exists if a person has an "unqualified legal right to do the action of which the petition complains." Again, the qualification is that "improper means" are not used.

Baldwin Properties, Inc. v. Sharp, 949 S.W.2d 952, 956–57 (Mo. Ct. App. 1997) (internal citations omitted). Improper means are acts that are "independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or common law." Nazeri v. Mo. Valley Coll., 860 S.W.2d 303, 317 (Mo. 1993). Here, plaintiff

9

alleges that defendant terminated the provider agreement without cause and failed to comply with notice requirements and did so for the purpose of transferring plaintiff's patients to itself or providers with whom it has more favorable agreements. Plaintiff has adequately pleaded that defendant used improper means and thus acted without justification.

Defendant cites Kelly v. State Farm Mut. Auto. Ins. Co., 218 S.W.3d 517, 526 n.3 (Mo. Ct. App. 2007), for the proposition that the tortious interference claim cannot stand as a matter of law because it had a right to terminate the provider agreement upon written notice with or without cause. "[N]o liability arises for interfering with a contract or business expectancy if the action complained of was an act that the defendant had a definite legal right to do without any qualification." Id. (citation omitted). However, this principle does not apply unless the party exercising the right to terminate "follows the appropriate procedures in doing so." Id. Under those circumstances, "the termination itself cannot give rise to a cause of action for wrongful interference with business relationships." Id. (citation omitted). Here, plaintiff alleges that defendant had no justification for terminating the provider agreement and did not follow the appropriate procedures.

Finally, defendant argues, and plaintiff does not refute, that the tortious interference claim is barred by the economic loss doctrine. In Missouri, "[t]he economic loss doctrine bars 'recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty.'" Dubinsky v. Mermart, LLC, 595 F.3d 812, 819 (8th Cir. 2010) (quoting Zoltek Corp. v. Structrual Polymer Group, Ltd., 2008 WL 4921611 *3 (E.D. Mo. Nov. 13, 2008), aff'd on other grounds, 592 F.3d 893 (8th Cir. 2010)). Where the parties have a relationship based in contract,

"[a tort] claim to recover economic losses must be independent of the contract or such claim [is] precluded by the economic loss doctrine." Self v. Equilon Enterprises, LLC, No. 4:00CV1903TA, 2005 WL 3763533, at *11 (E.D. Mo. Mar. 30, 2005) (reviewing Missouri case law). In this case, plaintiff's claim for tortious interference arises from defendant's termination of the provider agreement. See id. (plaintiffs' claim for tortious interference with customers barred by economic loss doctrine). "Plaintiffs are seeking to recover in tort for losses that are contractual in nature and the only damages asserted are purely economic losses, lost profits and business and future business expectations . . . Accordingly, plaintiffs' claims for contractual relief affords plaintiffs' relief, and coterminous tort actions do not lie." Id. (dismissing tortious interference claim).

Plaintiff's tortious interference claim is barred by the economic loss doctrine. Defendant's motion to dismiss Count IV will be granted.

### D. Counts V and VI - Declaratory and Injunctive Relief

Defendant argues that plaintiff's claims for declaratory judgment, as asserted in Count V, and injunctive relief, as asserted in Count VI, should be dismissed because they are not independent causes of action.

"Where a party's declaratory judgment claim is purely duplicative of its breach of contract claim, the declaratory judgment claim may be properly dismissed." MidCountry Bank v. Rajchenbach, No. 15-CV-3683 (SRN/TNL), 2016 WL 3064066, at *3 (D. Minn. May 31, 2016) (citing MASTR Asset Backed Sec. Trust 2006–HE3 ex rel. U.S. Bank Nat. Ass'n v. WMC Mortgage, LLC, 983 F. Supp. 2d 1104, 1116 (D. Minn. 2013). "However, the mere fact that claims for declaratory judgment and breach of contract are closely related—even where the declaratory

judgment claim 'encompasses' the breach of contract claim—does not require dismissing the declaratory judgment claim. Id. (citing Marty H. Segelbaum, Inc. v. MW Capital, LLC, 673 F. Supp. 2d 875, 882 (D. Minn. 2009) ("While plaintiff's claim for a declaratory judgment encompasses its breach of contract claim, the declaratory judgment's scope is broader; were the Court to issue one, it might well delineate all . . . parties' rights and obligations, as well as resolve plaintiff's breach of contract claim. This goes well beyond any pure contract remedy."). Here, plaintiff's claims for declaratory judgment and breach of contract are closely related, but the declaratory judgment claim seeks the additional relief of determining the parties' rights and responsibilities under the provider agreement. See id. at *4 ("In short, the declaratory judgment claim will establish what the Defendants' obligations are while the breach of contract claim will resolve whether Defendants breached those obligations in a particular instance."). Defendant's motion to dismiss Count V will be denied.

"Plaintiffs may seek injunctive relief as part of their prayer for relief in another claim, but this remedy cannot stand as separate causes of action." Secure Energy v. Coal Synthetics, LLC, 2010 WL 1691184 (E.D. Mo. April 27, 2010). See also Henke v. Arco Midcon, L.L.C., 750 F. Supp. 2d 1052, 1059–60 (E.D. Mo. 2010) (injunctive relief is not an independent cause of action); Fletcher v. Conoco Pipe Line Co., 129 F. Supp. 2d 1255, 1264 (W.D. Mo. 2001) (there is no "injunctive" cause of action under Missouri or federal law). Defendant's motion to dismiss Count VI will be granted.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [Doc. # 47] is **granted in part and denied in part**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 15th day of December, 2016.