# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| CYSTIC FIBROSIS PHARMACY, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EXPRESS SCRIPTS, INC., ) <br> ) <br> Defendant. | Case No. 4:16-CV-1167 HEA |

## OPINION, MEMORANDUM AND ORDER

This diversity case is before the Court on the motions of Defendant for summary judgment on Counts I, II, III, V, and VII of the First Amended Complaint of Plaintiff; and the Motion to exclude the expert testimony of Jed Grennan, [Doc. No.'s 76, 96, and 94, respectively]. Plaintiff opposes the motions.[1]

## Facts and Background

Defendant is a pharmacy benefits manager. In this role, Defendant contracts with insurance carriers, health plan administrators, and other third-party payors "to facilitate delivery of prescription drugs to health plan members or other beneficiaries." This facilitation is effectuated, in part, by the creation of networks

---

[1] Counts IV, VI, and VIII of the First Amended Complaint were earlier dismissed by the Honorable Carol E. Jackson, now retired United States District Judge for the Eastern District of Missouri. (*See* Order of Dec. 15, 2016, Doc. No. 54).

established with various pharmacies that agree to fill prescriptions for the members. Plaintiff was one such pharmacy. In May 2014, Defendant entered into a Pharmacy Provider Agreement (the "Agreement") with Plaintiff. This Agreement defined "Pharmacy" as one which met its definition of "Retail Provider": "[A] pharmacy that primarily fills and sells prescriptions via a retail, storefront location ..." A "'Retail Provider' [did] not include mail order ... " Also, Provider shall, and shall cause its personnel to, be bound by and comply with the provisions of this Agreement and all applicable laws, rules and regulations, including ... applicable state boards of pharmacy's, other applicable governmental bodies' laws, rules and regulations, and all required federal, state and local licenses, certificates and permits that are necessary to allow the Provider, the Pharmacy, and pharmacist (as applicable) to dispense Covered Medications to Members ... If the Provider "cease[d] to be licensed by the appropriate licensing authority" or if Defendant "determine[d] that the Provider was dispensing Covered Medications in violation of any applicable law, rule and/or regulation," the Agreement could be immediately terminated by Defendant. Defendant's Provider Manual (the "Manual") is incorporated into the Agreement and also requires the Provider to "maintain valid non-resident licenses in all states to which it mails/ships/delivers Covered Medications." If a Provider violates any terms of the Agreement,

including the Manual, the Provider is deemed noncompliant and is subject to further action, including termination, at Defendant's sole discretion.

The Agreement authorized Defendant to audit a Provider and allowed for the Provider to appeal any results. This audit could include reviewing documentation verifying that the Provider has pharmacy and pharmacist licenses, "including licenses/permits/registrations required by states in which legend prescriptions are shipped/mailed." The initial audit report and a deadline for appeal of such are given the Provider. After review by the post-audit team, a final report and deadline for grieving the report is given the Provider. Any discrepancies identified are reviewed and any appropriate adjustments are then made.

On May 19, 2016, an auditor for Defendant conducted an audit of Plaintiff. As a result of the audit, Defendant learned that Plaintiff had shipped and/or delivered one or more prescriptions into at least Louisiana, North Carolina, Nebraska, Ohio, and Virginia. Plaintiff did not have non-resident licenses for these states.

On June 29, 2016 Defendant sent the initial audit results to Plaintiff which detailed the claims that were mailed into states in which Plaintiff was not licensed. The dates of the prescriptions sent to states in which Plaintiff did not have a license ranged from April 1, 2015 through May 15, 2016.

Defendant informed Plaintiff by letter of June 10, 2016 that Defendant was terminating its Agreement with Plaintiff and, effective July 18, 2016, would no longer consider Plaintiff to be a member of Defendant's provider network. This letter cited two reasons for the termination. First, Plaintiff had failed to maintain its required status as a "Retail Provider" and was instead primarily conducting a mail-order business. Second, Plaintiff was "regularly mailing drugs to members in states without the appropriate licensure."

Plaintiff does not dispute that it was mailing drugs to states for which it had no active non-resident license or that those states require such. Rather, Plaintiff argues it was in the process of applying for the needed licenses and it should have been, but was not, given an opportunity to correct the lack of licenses. Plaintiff further argues that the real reason for its termination from the network was Defendant's desire to gain market share by diverting high-priced pharmaceuticals to a mail-order enterprise, Accredo Health Group, Inc. ("Accredo"),[2] that is a wholly-owned subsidiary of Defendant.

Plaintiff seeks redress for Defendant's alleged (1) breach of the Agreement by terminating Plaintiff from the network of participating pharmacies (Count I); (2) breach of the implied duty of good faith and fair dealing (Count II); (3) unjust

---

[2] On its website, Accredo describes itself as having been organized in 1996, becoming a publicly-traded company in 1999, and becoming a wholly-owned subsidiary of Defendant in 2012. *See* About Accredo, http://www.accredo.com/about-accredo (last visited on January 19, 2017).

4

enrichment (Count III); and (4) breach of contract by failing to pay Plaintiff monies owed (Count VII). Plaintiff also seeks a declaratory judgment defining the parties' rights and responsibilities under the Agreement (Count V).

Defendant seeks summary judgment on these five remaining counts.

## Summary Judgment Standard

The Court may grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex,* 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the mere existence of some alleged factual dispute. *Anderson,* 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson,* 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Id.* at 249.

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.

In order to survive a motion for summary judgment, "the nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [her] favor based on more than mere speculation, conjecture, or fantasy.'" *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733–34 (8th Cir. 2003)) (internal quotation marks omitted).

## Discussion

**Count I: Breach of Contract**.

Defendant contends that it is undisputed that Plaintiff breached its Agreement by failing to obtain and maintain valid non-resident licenses in all

6

states to which it shipped prescriptions. Plaintiff counters that it did not breach the Agreement as it was modified by the parties' course of dealing and course of performance.

"'Under Missouri law,[3] [a] breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.'" *Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC,* 784 F.3d 1183, 1188 (8th Cir. 2015) (quoting *Smith Flooring, Inc. v. Pa. Lumbermens Mut. Ins. Co.,* 713 F.3d 933, 941 (8th Cir. 2013)) (alteration in original) (footnote added). "'If the contract is unambiguous, then the intent of the parties is to be gathered from the contract alone, and any extrinsic or parol[] evidence as to the intent and meaning of the contract must be excluded from the court's review.'" *Id* (quoting *Lafarge N Am., Inc. v. Discovery Grp LLC,* 574 F.3d 973, 979 (8th Cir. 2009)) (alteration in original). "'[S]ummary judgment is appropriate [in a contract case] where the language of the contract is clear and unambiguous such that the meaning of the portion of the contract in issue is so apparent that it may be determined from the four corners of the document.'" *Id.* (quoting *Deal v. Consumer Programs, Inc.,* 4 70

---

[3] The Agreement provides that it is to "be construed and governed in all respects according to the internal laws in the State of Missouri .... "

F.3d 1225, 1229 (8th Cir. 2006)) (second alteration in original). "'The burden of proof rests with the party claiming breach of contract.'" *Id.* at 1189 (quoting *Scheck Indus. Corp. v. Tarlton Corp.,* 435 S.W.3d 705, 723 (Mo.Ct.App. 2014)).

The Agreement, including the incorporated Provider Manual, required Plaintiff to maintain non-resident licenses in states to which it shipped prescriptions. Plaintiff did not do so. "'[I]f a party, by contract, is obligated to a performance that is possible to be performed, the party must make good unless performance is rendered impossible by an Act of God, the law, or the other party.'" *Rohr v. Reliance Bank,* 826 F.3d 1046, 1053 (8th Cir. 2016) (quoting *Farmers' Elec. Co-op, Inc. v. Missouri Dep't of Corr.,* 977 S.W.2d 266, 271(Mo.1998) (en bane)).

Plaintiff argues, however, that the parties' course of dealing and performance modified their Agreement. As noted by Plaintiff, Mo.Rev.Stat. § 400.2-202(a)[4] allows an agreement to be explained or supplemented by a course of dealing or a course of performance. Plaintiff alleges that the course of dealing or performance by Defendant was to give a Provider an opportunity to respond to problems identified in an audit and also to initiate a corrective action plan to help the offending Provider succeed; Plaintiff was offered neither and was also not offered

---

[4] This Section is part of the Uniform Commercial Code adopted by Missouri. Neither party addresses the issue whether the Agreement is within the scope of the Code. Plaintiff's argument being meritless, the Court declines to also.

8

any education.  Section 4.2.b of the Agreement does provide for a party to be given notice of a default of its performance of any obligations under the Agreement and to be given an opportunity to cure such default. Plaintiff, however, was terminated under section 4.2.c of the Agreement, which specifically delineates rights Defendant has to immediately terminate a Provider "[n]otwithstanding the provisions contained in Section 4.2.b."

Plaintiff also argues that Defendant breached their Agreement because the behavior for which it was allegedly terminated existed before the Agreement and continued after the Agreement was executed. This argument is unavailing. The Agreement was entered into in May 2014; Plaintiff was audited in May 2016. The dates of the unauthorized mailings ranged from April 2015 to May 15, 2016. Moreover, where as in the instant case, the terms of the contract are clear and unambiguous, proffered "extrinsic evidence of the parties' intentions and past dealings is barred under Missouri law by the parol evidence rule." *Union Elec. Co. v. Consolidation Coal Co.,* 188 F.3d 998, 1002 (8th Cir. 1999)

President and CEO of Plaintiff averred that Plaintiff was terminated for behavior that is directly contradicted by the decades long relationship between the parties as well as the course of performance after institution of the latest written contracts between the parties.  Evidence of a course of dealing or performance is admitted only "to explain or supplement the terms of an agreement ... , but not to

9

contradict the agreement terms." *JR. Waymire Co. v. Antares Corp.,* 975 S.W.2d 243, 247 (Mo.Ct.App. 1998) (excluding evidence of oral modification of written agreement to exclude entity as potential buyer of property in action seeking payment of commission after sale was made to that entity).

    Allowing Adams' testimony about the parties' prior dealings would contradict the Agreement, not explain or supplement it. First, Adams did not differentiate between Defendant and its predecessors. Second, her argument ignores the inclusion in the Agreement of a clause providing that "[n]o waiver of a breach of any covenant or condition shall be construed to be a waiver of any subsequent breach. No act, delay, or omission done, suffered, or permitted by the parties shall be deemed to exhaust or impair any right, remedy, or power of the parties hereunder." *Cf Smith Flooring,* 713 F.3d at 935-36, 940-41 (allowing testimony about parties' prior insurance contracts when later ones did not exclude certain buildings from coverage as had prior contracts and testimony established that parties meant to, and thought they had, excluded buildings as previously). Third, her argument also ignores the provision reading "[t]his Agreement, including its ... Provider Manual, ... constitutes the entire agreement of the parties with respect to the subject matter herein and, upon execution by the parties, supersedes all prior oral or written agreements between the parties with respect to

the subject matter hereof." In Missouri, "[t]he inclusion of a merger or integration clause in the written contract makes '[t]he parol evidence rule ... particularly applicable.'" *Smiley v. Gary Crossley Ford, Inc.,* 859 F.3d 545, 553 (8th Cir. 2017) (quoting *Rosenfield v. Boniske,* 445 S.W.3d 81, 88 (Mo.Ct.App. 2014). Such clauses '"are intended to prevent extrinsic evidence of other agreements from influencing the interpretation of a final written contract, preserving the sanctity of written contracts."' *Id* (quoting *Rosenfield,* 445 S.W.3d at 88). Moreover, an integration clause "is a strong indication that the parties intended for the Agreement to be complete and final." *PlaNet Prods. Inc. v. Shank,* 119 F.3d 729, 732 (8th Cir. 1997). *Cf CL. Maddox, Inc. v. Benham Group, Inc.,* 88 F.3d 592, 599 (8th Cir. 1996) (finding evidence of prior oral agreement was admissible regardless of integration clause when oral agreement was wholly separate, fully-performed, independent contract "that did not inherently conflict with the written agreement" and could be characterized as "separate, stand-alone contract").

A primary consideration when construing the terms of a contract is whether its plain language "clearly addresses the matter at issue." *TAP Pharm. Prods., Inc. v. State Bd. of Pharmacy,* 238 S.W.3d 140, 143 (Mo. 2007) (en banc). If so, "the inquiry ends." *Id.* For the reasons set forth above, the Court's inquiry in Count I is at an end. Count I will be dismissed.

**Count II: Breach of Implied Duty of Good Faith and Fair Dealing**

Plaintiff alleges in the First Amended Complaint that Defendant is (a) "enforcing a termination against [Plaintiff] on inaccurate conclusions and without full evaluation of all materials" and (b) is diverting Plaintiffs patients and revenues to Defendant's own specialty pharmacy or a pharmacy that is "more economically advantageous" to Defendant. By doing so, Defendant is not acting on good faith and using improper and inaccurate assertions, conclusions and information to terminate Plaintiff.

"Under Missouri law . . . , a covenant of good faith and fair dealing is implied in every contract, but 'there can be no breach of the implied ... covenant ... where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract.'" *CitiMortgage v. Chicago Bancorp, Inc.,* 808 F.3d 747, 751 (8th Cir. 2015) (quoting *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co.,* 464 S.W.3d 177, 183 (Mo. 2015) (en banc)) . "It is not enough 'to show that a party invested with discretion made an erroneous decision.'" *Id* at 752 (quoting *BJC Health Sys. v. Columbia Cas Co.,* 478 F.3d 908, 914 (8th Cir. 2007)). "Instead, the plaintiff must show that the party exercised its discretion 'in such a manner as to evade the spirit of the transaction or so as to deny [the other party] the expected benefit of the contract.'" *BJC Health Sys.,* 478 F.3d at 914 (quoting *Mo. Consol. Health Care Plan v. Cmty. Health Plan,* 81 S.W.3d 34, 45 (Mo.Ct.App. 2002) (alteration in

original). The implied covenant of good faith and fair dealing does not create "an everflowing cornucopia of wished-for legal duties" and "cannot give rise to new obligations not otherwise contained in a contract's express terms." *Comprehensive Care Corp. v. RehabCare Corp.,* 98 F.3d 1063, 1066 (8th Cir. 1996).

Plaintiff's first allegation in support of its Count II claim lacks factual support. Rather, the undisputed evidence is that Plaintiff did not have the required non-resident licenses. Although Plaintiff takes issue with Defendant targeting those prescriptions shipped to states where Plaintiff did not have the appropriate licenses, there is no evidence to support that this was selective enforcement of the Agreement's provision authorizing Defendant to conduct an audit to verify that a Provider, e.g., Plaintiff, was complying with the Agreement and the Provider Manual.

Plaintiff's second allegation - that Defendant breached its implied duty by acting in self-interest - is also without merit. The only support for this claim is Plaintiff's belief of Defendant's motivation. *See Affordable Communities of Mo. V Federal Nat'! Mortg. Ass'n,* 714 F.3d 1069, 1077 (8th Cir. 2014) (rejecting similar claim on grounds it lacked support of any specific facts and was based only on conclusory statements). Moreover, "the implied duty of good faith and fair dealing does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits

from the contract." *Countrywide Servs. Corp. v. SIA Ins. Co.,* 235 F.3d 390, 393 (8th Cir. 2000)(interim quotations omitted) (rejecting claim of breach of implied duty by defendant whose pursuit of legal remedies against non-parties caused difficulties for plaintiff). *Cf Slone v. Purina Mills, Inc.,* 927 S.W.2d 358, 368 (Mo.Ct.App. 1996) (summary judgment was erroneously granted in case arising from direct competition of parent company, defendant, with its dealer, plaintiff; agreement reserved right of defendant to directly sell to '"very large operations" who would not buy from a dealer, but genuine issue of material fact remained whether buyers at issue qualified as such and whether they had refused to buy from dealer). In the instant case, the record before the Court establishes that Defendant terminated the Agreement with Plaintiff for its failure to comply with clearly-defined requirements. Count II will be dismissed.

**Count III: Unjust Enrichment.**

Plaintiff alleges that Defendant terminated its Agreement with Plaintiff in order to increase its own revenues by diverting patients to pharmacies with which it has a more advantageous contract. By doing so, Defendant has been unjustly enriched.

"Under Missouri law, a plaintiff is entitled to restitution for unjust enrichment when (1) the defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it would be unjust to allow

the defendant to retain the benefit." *PlaNet,* 119 F.3d at 733. "The third element ... is considered the most significant and the most difficult of the elements." *Adams v. One Park Place Investors, LLC,* 315 S.W.3d 742, 749 (Mo.Ct.App. 2010). Mere receipt of benefits does not establish the third element. *Miller v. Horn,* 254 S.W.3d 920, 924 (Mo.Ct.App. 2008).

     Plaintiff argues that summary judgment on its unjust enrichment is defeated by the "material fact" that "Accredo, the wholly-owned subsidiary pharmacy of Defendant, has been established and taken market share from Plaintiff; this retention of the market share and resulting profits is unjust; and damages, in direct contradiction of Defendant's assertions, have been provided and established." Plaintiff's argument is unavailing. First, Plaintiff has failed to submit any admissible evidence in support. *See Crews v. Monarch Fire Prat. Dist.,* 829 F.3d 661, 667 (8th Cir. 2016) ("At summary judgment, the requisite 'genuine dispute,' Fed.R.Civ.P. 56(a), must appear in admissible evidence."). The affidavit of Adams describing this alleged behavior cites no supporting evidence. Asked if she could name a patient of Plaintiff who was diverted to Defendant, Adams replied she could not "at this time." She never did. Asked what Defendant received as a benefit, she replied, "Dollars, money, greed," but did not know how much. Second, Adams replied "Yes" when asked if the damages sought by Plaintiff were "solely related to the termination of the contract." "Missouri law does not allow a

15

plaintiff to maintain an action [for unjust enrichment] when an express contract governs the subject matter for which recovery is sought." *32nd Street Surgery Ctr., LLC v. Right Choice Managed Care,* 820 F.3d 950, 955-56 (8th Cir. 2016).

**Count V: Declaratory Judgment.**

Plaintiff seeks a declaration that the parties "have a valid Provider Agreement." *See* Fed.R.Civ.P.57 (allowing action for declaratory judgment regardless whether there is another adequate remedy). The Court having previously determined that Plaintiff breached the Agreement, this Count will be dismissed. *See Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc.,* 2007 WL 2811080, *2 (E.D. Mo. Sept. 24, 2007) ("Adjudication of the breach of contract claim . . . render[ s] the request for declaratory judgment moot or redundant ... ").

**Count VII: Breach of Contract.**

In this claim, Plaintiff seeks damages in the amount of monies withheld by Defendant from remittance payments to Plaintiff. The Provider Manual specifically authorizes Defendant to reverse and recoup paid claims made in violation of its Agreement and the Manual.
Count VII will also be dismissed.

## Conclusion

The admissible evidence before the Court establishes that Defendant had a right under its Agreement with Plaintiff to terminate that Agreement for Plaintiffs

16

lack of required non-resident licenses for states to which it shipped medications and to recoup monies paid for those medications.

Accordingly,

**IT IS HEREBY ORDERED** that the motions of Defendant for summary judgment on Counts I and II [Doc. No. 76] and for summary judgment on Counts III, V, and VII [Doc. No. 96] are **GRANTED.**

**IT IS FURTHER ORDERED** that the motion of Defendant to exclude expert testimony [Doc. No. 94] is **DENIED** as moot.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 22nd day of January, 2018..

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE